## HAMILTON *v.* WILCOX.

1. APPEAL AND ERROR—DECREES—EQUITY PRACTICE.

  Objections to the correctness and sufficiency of a case proposed for settlement on appeal must be raised by proposing amendments to the same, and a wrongful refusal to grant proper amendments might be reviewable; but in the absence of such proposed amendments the objection is untenable that the appeal related only to a part of the decree, and that only portions of the testimony were included in the record.

2. HOMESTEAD — CREDITORS' SUITS — DIVIDING LOTS OCCUPIED AS HOMESTEAD—HUSBAND AND WIFE.

  Though a homestead consisting of a house and other buildings on a single lot is capable of physical division, in a suit by the executor of an estate to have property that was voluntarily transferred by deceased to third parties, who reconveyed the property to the grantor and his wife jointly, applied on the claims of creditors, it is inequitable to divide the homestead, leaving to the widow a parcel including the home, worth $1,500, when the effect of such a division is to decrease the value of the parcel remaining by requiring it to be sold separately.

3. SAME — EQUITY — JURISDICTION — SALE OF HOMESTEAD — CREDITORS' SUITS.

  Chancery has jurisdiction, in a suit brought by the executor to set aside conveyances of decedent of his property, to order a sale of the homestead subject to the rights of the widow, and

the statutes applying to a homestead not platted or set apart, and to levies on execution or sales upon foreclosure, do not affect the question. 3 Comp. Laws, § 10364; Act No. 218, Pub. Acts 1899.

4. SAME—PROBATE COURTS—DEBTOR AND CREDITOR.
    The fact that the widow claimed absolute title to the premises by the entireties, under a deed executed by her deceased husband to third parties, who conveyed to the husband and wife jointly, conferred jurisdiction on the court of equity to dispose of the respective claims; and, having obtained jurisdiction, equity will dispose of the entire controversy.

5. SAME—ESTATES OF DECEDENTS.
    Where the question is solely the setting apart of or selling the homestead of decedent the probate court would be the proper forum. 3 Comp. Laws, §§ 9134, 9363 et seq.

Appeal from Eaton; Smith, J. Submitted November 6, 1911. (Docket No. 45.) Decided December 8, 1911.

Bill by Herbert H. Hamilton, as executor of the estate of Daniel P. Wilcox, deceased, against Anna Wilcox and others to set aside as fraudulent conveyances of real property held by decedent. From a decree for complainant ordering a division of defendant's homestead, complainant appeals. Modified and affirmed.

*Horace S. Maynard* and *Joseph B. Hendee*, for complainant.

*Elmer N. Peters* and *Garry C. Fox*, for defendants.

STEERE, J. In this suit complainant appeals only from that portion of the decree directing division, instead of sale, of a city lot with a residence and other improvements thereon, which exceeds in value $1,500, and is claimed by defendant Anna Wilcox as a homestead.

A preliminary objection is made by counsel for defendants that the case cannot be reviewed upon a single point —"upon a partial and garbled appeal detrimental to the rights of the defendant." It appears that such objection

was made before the trial court upon settlement of the case.

It is stated in the printed record, and not disputed, that certain amendments prepared by solicitors for defendant were incorporated in the proposed case by complainant's solicitors, and at the hearing for settlement no further amendments were presented; the solicitors for defendant only filing written objections to the judge settling and signing the case. The objections were, in substance, that there was no law authorizing a partial appeal, and that the testimony covered only a part of the issues involved in the controversy.

Appeals in chancery are governed by Act No. 299, Pub. Acts 1909 (amended as to sections 4 and 6, Act No. 160, Pub. Acts 1911), and Chancery Rule 37. Under said rule the party desiring to appeal prepares and presents to the court for settlement such portion of the testimony and records in the case as he deems necessary to present fairly the points he desires reviewed. Notice is given to the opposite party, who has opportunity to then prepare and present such amendments as are desired. The way to raise objections to the correctness and sufficiency of a case proposed for settlement is to propose amendments thereto. Any unjust refusal by the court to consider or incorporate any proper set of amendments in the case might be reviewable. In the absence of such amendments being proposed, the case certified and signed by the trial judge is taken as the case on appeal before this court.

The defendant Anna Wilcox is the widow of Daniel P. Wilcox, who died testate in the city of Eaton Rapids on the 17th day of October, 1905. His will was probated in Eaton county on December 14, 1905; the complainant being appointed executor of the estate. The commissioners on claims reported as allowed against the estate: First-class claims, $108.25; fourth-class claims, $1,913.89—making a total of $2,022.14. The assets of the estate, as shown by the inventory, were a farm, three certain city lots, and personal property appraised at $85.40. Upon one

of these lots was the home of the deceased, being the property involved in this appeal. The executor procured license to sell the real estate of the deceased to pay debts and expenses of administration. The farm proved to be heavily mortgaged, and he was only able to obtain $500 for the equity, including the dower interest of the widow, for which she was paid $88.24.

At the time of the death of Daniel P. Wilcox, there stood in his name unincumbered on the records in the office of the register of deeds certain real estate described as lots 1, 6, and the north 97 feet of lot 7 of block 2, Thompkins' addition to the city. On October 31, 1905, two deeds were recorded which placed the title in defendant Anna Wilcox. One of these deeds was from Daniel P. Wilcox and Anna Wilcox, his wife, grantors, to the two defendants Smalley, dated December 21, 1904, and the other deed was of the same date, conveying the premises back to Daniel P. Wilcox and Anna Wilcox, as husband and wife, evidently designed for the purpose of creating a title by entirety in said Daniel Wilcox and his wife, Anna Wilcox. The Smalleys simply figured as mediums in this transfer of title, had no interest in the controversy, and an order *pro confesso* was entered as to them.

This suit was instituted by complainant in behalf of the estate to set aside these two deeds as void, on the ground that Daniel P. Wilcox was mentally incompetent at the time he made the deeds, that they were procured by fraud and undue influence, and were also void as against creditors, being without valid consideration. The court set the deeds aside upon the latter ground, holding them fraudulent and void as against creditors, being voluntary and without valid consideration. It was conceded by the defense that the last contention was well founded, and no opposition was urged against that proposition. Lot 6 and the north 97 feet of lot 7 were separated from lot 1 by a partition fence and a barn; they being bought by the deceased some time after the purchase of lot 1, upon which

he resided at the time of his death. Lot 1, conceded to be the homestead of deceased and his wife, defendant Anna Wilcox, was found by the court to be worth a substantial sum more than $1,500.

In his first findings the court directed that lot 1 be offered for sale, and, if it brought more than $1,500, that that sum be paid to the widow and the balance turned into the estate to satisfy creditors, giving the widow, however, the option of paying the estate the excess above $1,500 and taking the property.

Subsequently a petition was filed in behalf of the widow to reopen the case and modify the finding as to lot 1, and, instead of directing it to be sold, that a partition be ordered, giving her the dwelling house and sufficient ground to make a homestead not exceeding in value $1,500.

The case was reopened, and various proceedings had, all bearing upon the disposition of lot 1, a final decree being ultimately signed by the court setting aside the deeds as to lot 6 and the north 97 feet of lot 7, and lot 1 except as to the homestead interest of the widow therein.

As to said lot 1, the court, having found that it had a value materially exceeding $1,500, held that it was physically capable of such a division as to carve out a homestead consisting of a dwelling house and the west 106.7 feet of said lot, not exceeding in value $1,500, which he assigned to said Anna Wilcox as her homestead right "free and clear from all claims of creditors and heirs at law of said Daniel P. Wilcox, deceased." This left to the estate the east 41 feet of said lot with a barn thereon.

Complainant appeals only from that portion of the proceedings and decree which relate to a division of said lot, claiming that under the pleadings and proofs such division destroys values, and the court should direct a sale of the property as a whole; $1,500 of the proceeds to go to the widow, and the balance to the estate.

The homestead is a single lot of block 2 of Thompkins' addition to the city of Eaton Rapids. It has upon it a dwelling house and barn, with other appurtenances. It

is a corner lot 66.4 x 147.7 feet in dimensions.   The annexed diagram gives a general outline of the location, with adjacent streets, and the relative position of the improvements.   River street, on which the house fronts, is one of the best residence streets in the city.   Holmes street, on which the barn and barnyard are located, has been little improved.   There are comparatively few houses along it and it is without sidewalks.

The testimony returned in this case relates chiefly to the value of this property, both divided and taken as a whole.   Its chief value is in the dwelling, which is a well-constructed frame house with some modern conveniences. A builder and contractor of many years' experience, who figured out in detail the material and labor, estimated its cost as $3,380.60.   A former owner of the property, who built the house and made the other improvements on the property for a home for himself, testified that it cost him $4,000.   He later, during a panic, and as a result of a business failure, sold the same to Daniel P. Wilcox for $1,625 subject to a mortgage of $400.   The executor of the estate was offered $2,600 for the property.   While there is considerable conflict of testimony as to its value, we think it clearly shown that this homestead as an en-

tirety has a safe market value in the neighborhood of $2,500, and as a whole would sell for that price at least. The testimony seems equally conclusive that the rear 41 feet with the barn, which it was proposed to exclude from the homestead in order to reduce the homestead value to $1,500, is undesirable and mainly valuable as a part of lot 1 as a home, and separated from it would be worth from $200 to $300 only.

It is undoubtedly true that the property is physically capable of such division as to carve out a homestead consisting of a dwelling house and part of a lot, not exceeding in value $1,500, but to do this is destructive of the value of the single city lot as a whole, and loads the reduction on the remaining portion at the expense of the estate. Such a course is manifestly unjust and inequitable. The rights of both parties must be considered and protected. This is not a case where the premises can be "divided without material loss or injury." The lot should be sold as an entirety.

The real controversy in this case is between the creditors and the widow. There are no minor children. Defendant Anna Wilcox when a widow of 38 years of age married Daniel P. Wilcox, the deceased, a widower 71 years of age. They were married in December, 1900, and he died in October, 1905. During their married life they occupied the premises in question as a home. In this property she has an unquestioned homestead interest amounting to $1,500. The right of the creditors to what said premises, as a whole, are worth in excess of that amount is also equally beyond question.

We cannot agree with the contention that a chancery court has no jurisdiction to pass upon values or order a sale of a homestead in a case of this nature. It is not, in our opinion, controlled by the statutes on that subject. Chapter 287, §§ 10364, 10365, 3 Comp. Laws, as amended by Act No. 218, Public Acts of 1899, limits the proceedings to levy under execution, or decree upon foreclosure of a

mortgage, on lands where the homestead has not been platted or set apart by metes and bounds.

Had no litigation arisen over the title of this property, and had the question been solely one of setting apart or selling land in which a homestead interest was claimed, the probate court would have been the proper forum to dispose of the matter, under 3 Comp. Laws, § 9134, and following, or sections 9363 *et seq.;* but, in this instance, the defendant Anna Wilcox claimed absolute title to the lot in question, together with other city property of her husband, as against the estate and its creditors. The suit was therefore properly planted in the chancery court to litigate the title and the rights of the respective parties in that connection. Having once acquired jurisdiction of the subject, equity will retain it to give full relief and make final disposition of the questions involved. *George* v. *Electric Light Co.*, 105 Mich. 1 (62 N. W. 985); *Rhoades* v. *McNamara*, 135 Mich. 644 (98 N. W. 392).

The one question brought before this court by appeal is whether the decree of the court shall stand as it is touching the cutting out of a homestead from lot 1, or be modified to directing that it be offered for sale as an entirety; the proceeds up to $1,500 to go to the appellee for her homestead interest, and the balance to the estate for creditors.

In that particular the decree should be modified as heretofore indicated, with costs to complainant.

OSTRANDER, C. J., and MOORE, BROOKE, and STONE, JJ., concurred.